This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38655

**STATE OF NEW MEXICO, ex rel.**
**CHILDREN, YOUTH & FAMILIES**
**DEPARTMENT,**

       Petitioner-Appellee,

v.

**MELISSA B.,**

       Respondent-Appellant,

and

**IN THE MATTER OF KING B.,**

       Child.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Marie Ward, District Judge**

Children, Youth & Families Department
Rebecca Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Assistant Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Jane B. Yohalem
Jane B. Yohalem
Albuquerque, NM

for Appellant

Beckham A. Rivera,
Albuquerque, NM

Guardian Ad Litem for Child

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** Respondent-Appellant Melissa B. (Mother) appeals following the termination of her parental rights with respect to her child, King B. (Child). We previously issued a calendar notice proposing to summarily affirm. Mother has responded with a combined memorandum in opposition and motion to amend the docketing statement. After due consideration, we remain unpersuaded. We therefore affirm.

**{2}** As an initial matter, we note that the memorandum in opposition contains no further argument relative to the issues originally raised in the docketing statement. Accordingly, those issues are deemed abandoned. *See State v. Billy M.*, 1987-NMCA-080, ¶ 2, 106 N.M. 123, 739 P.2d 992 (indicating that issues listed in the docketing statement but not addressed in the memorandum in opposition are deemed abandoned).

**{3}** By her motion to amend, Mother seeks to advance one or more related arguments stemming from the foster parents' decision not to pursue adoption. This developed after the termination of parental rights hearing had concluded. [MIO 10; RP 294, 322, 340-41, 345]

**{4}** A motion to amend the docketing statement will only be granted for good cause. *See* Rule 12-208(F) NMRA. This requirement has been interpreted to require satisfaction of any applicable preservation requirements, and a showing that the issue is viable. *See State v. Moore*, 1989-NMCA-073, ¶ 42, 109 N.M. 119, 782 P.2d 91, *overruled on other grounds by State v. Salgado*, 1991-NMCA-044, 112 N.M. 537, 817 P.2d 730. For the reasons that follow, we deny the motion.

**{5}** Mother tacitly acknowledges that the arguments that she now seeks to raise were not preserved. [MIO 4] Although Mother suggests inability, [MIO 1112] we note that she was at liberty to file a motion, pursuant to Rule 10-146(A) and/or (C) NMRA, or a motion for reconsideration, pursuant to NMSA 1978, Section 39-1-1 (1917). *See State of N.M. ex rel Children, Youth & Families v. Kathleen D.C.*, 2007-NMSC-018, ¶¶ 9-10, 141 N.M. 535, 157 P.3d 714 (indicating that Section 39-1-1 motions are viable means of preserving issues in TPR cases). Nevertheless, to the extent that Mother and her attorney may have been unaware of the subsequent development, [MIO 11-12] and in light of the fundamental interests at stake, *see In re Adoption Petition of Darla D.*, 2016-NMCA-093, ¶ 11, 382 P.3d 1000, we will consider Mother's arguments under the auspices of the doctrine of fundamental error. *See State ex rel. Children, Youth & Families Dep't v. Paul P., Jr.*, 1999-NMCA-077, ¶ 14, 127 N.M. 492, 983 P.2d 1011

(stating that "termination of parental rights cases can be candidates for fundamental error analysis").

**{6}**     We will begin with Mother's contention  that the district court erred in failing to "reconvene the termination of parental rights hearing," *sua sponte*, upon learning of the foster parents' disinterest in adopting. [MIO 2, 3] At the outset, we observe that Mother cites no authority on point. We therefore assume no such authority exists. *See generally In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining that where a party cites no authority to support an argument, the appellate courts may assume no such authority exists). We therefore consider the argument in light of more general principles.

**{7}**     As an abstract proposition, the district courts retain a reservoir of equitable power to reopen judgments and order new trials sua sponte. *Martinez v. Friede*, 2004-NMSC-006, ¶ 15, 135 N.M. 171, 86 P.3d 596, *superseded by rule on other grounds as stated in State v. Moreland*, 2008-NMSC-031, ¶ 11, 144 N.M. 192, 185 P.3d 363. However, this power is to be exercised only in "exceptional circumstances," *Martinez*, 2004-NMSC-006, ¶ 15, and we are aware of nothing which could be said to  *require* the district courts to undertake such dramatic action.  The limited authority of which we are aware tends to indicate otherwise *Cf. State v. Johnson*, 2010-NMSC-016, ¶ 55, 148 N.M. 50, 229 P.3d 523 (reviewing for fundamental error, and holding that "failure of the district court to conduct an unrequested evidentiary hearing does not 'shock the conscience' such that reversal is required."). To the extent that Mother may invite this Court to hold that it was incumbent upon the district court to do so in this case, we deem it improvident.

**{8}**     Mother further contends that she was denied due process, on the theory that she lacked notice and was deprived of the opportunity to present a defense. [MIO 5-11] However, Mother was clearly on notice of the statutory basis for termination  advanced by the Department and ultimately relied upon by the district court, and Mother was provided the opportunity to present a defense. [RP 286-90, 356-59] Mother's failure to fully avail herself of that opportunity was by her own choice. [MIO 10] Under the circumstances, we are unpersuaded she was deprived of notice or the opportunity to present a defense. *See, e.g.*, *State ex rel Children, Youth & Families Dep't v. Brandy S.*, 2007-NMCA-135, ¶ 33, 142 N.M. 705, 168 P.3d 1129 (holding that the mother's due process rights were not violated where she "had fair notice of the central issues that were to be litigated at the hearing[,]" she had the opportunity to present a defense, and the district court did not rely on evidence that was not properly established at the TPR hearing).

**{9}**     We acknowledge that the foster parents' changed position on adopting Child was a significant development. However, it does not follow that due process considerations required that the district court conduct further proceedings, entailing Mother's participation, to address that development. We engage in a balancing, focusing on the risk to Mother of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. *See State ex rel. Children, Youth & Families Dep't  v. Mafin M.*, 2003-NMSC-015, ¶ 19, 133 N.M. 827,

70 P.3d 1266; *State ex rel. Children, Youth & Families Dep't v. Steve C.,* 2012-NMCA-045, ¶ 13, 277 P.3d 484.

**{10}** As briefly described in the notice of proposed summary disposition, [CN 3] the termination of Mother's parental rights was premised on her abuses and/or neglect of Child, on essentially undisputed evidence that the conditions and causes of Child's neglect and abuse were unlikely to change in the foreseeable future despite reasonable Departmental efforts, and on the district court's determination that termination of Mother's parental rights would be in Child's best interests. [RP 358] Although the foster parents' subsequent decision not to pursue adoption was a material consideration, it only bore upon one of those statutory requisites: the best interests calculus. *See generally* NMSA 1978, § 32A-4-28(A) (2005) ("In proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child, including the likelihood of the child being adopted if parental rights are terminated."). And although the evidentiary hearing on the Department's motion to terminate Mother's parental rights did entail the presentation of evidence concerning the foster family's apparent interest in adopting Child, [MIO 9] the district court was made aware of that family's change of position prior to entering the final judgment, [MIO 10; RP 341] and it ultimately entered findings and conclusions which make clear that it determined that termination of Mother's parental rights remained in the best interest of Child, notwithstanding the later development. [RP 358] Given the district court's familiarity with the applicable legal principles and standards, the case history, and the relevant evidence and information, we perceive little risk to Mother of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards would be minimal. *Cf. State v. Pickett*, 2009-NMCA-077, ¶ 21, 146 N.M. 655, 213 P.3d 805 (observing that "we presume that the judge in a bench trial is able to properly weigh the evidence"). We are therefore unpersuaded that due process considerations require more.

**{11}** Mother also suggests that her attorney's failure to take further action, by requesting a new hearing or otherwise, amounted to ineffective assistance of counsel. [MIO 12-13] In light of Mother's statement to counsel that she no longer wished to oppose the termination of her parental rights, [MIO 10] as well as her failure to appear on the second day of the hearing, [RP 10] we question whether counsel should have anticipated that Mother would take interest in reopening the matter. In any event, the record before us does not reflect that counsel's alleged failings actually prejudiced Mother. As previously described, the record established that despite "exceptional" efforts by the Department over the course of nearly two years, Mother failed to make progress in alleviating the causes and conditions of abuse and neglect. [MIO 9; RP 358; CN 3] "Prolonged uncertainty and instability is particularly detrimental[,]" *State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 45, 136 N.M. 53, 94 P.3d 796, and the district court clearly found that Child's best interests would be served by the termination of Mother's parental rights, regardless of the diminished prospect of immediate adoption by the foster family. [RP 358] We therefore conclude that Mother has failed to make a prima facie showing of ineffective assistance of counsel. *See, e.g., State ex rel. Children, Youth & Families Dep't v. Rosa R.*, 1999-NMCA-141, ¶ 13, 128

N.M. 304, 992 P.2d 317 (rejecting a claim of ineffective assistance of counsel where there was substantial evidence in the record to support the trial court's decision, and the record did not indicate that the result would have been different if counsel had pursued a different course of action); *see also State ex rel. Children, Youth & Families Dep't v. Vanessa C.,* 2000-NMCA-025, ¶ 33, 128 N.M. 701, 997 P.2d 833 (recognizing that failure to prove prejudice is fatal to a claim of ineffective assistance of counsel).

**{12}** Accordingly, for the reasons stated above and in our notice of proposed summary disposition, the judgment of the district court is affirmed.

**{13}   IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JENNIFER L. ATTREP, Judge**